2022 IL App (1st) 221582

SECOND DIVISION
November 17, 2022

No. 1-22-1582

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ILLINOIS ROAD AND TRANSPORTATION BUILDERS ASSOCIATION, FEDERATION OF WOMEN CONTRACTORS, ILLINOIS ASSOCIATION OF AGGREGATE PRODUCERS, ASSOCIATED GENERAL CONTRACTORS OF ILLINOIS, ILLINOIS ASPHALT PAVEMENT ASSOCIATION, ILLINOIS READY MIXED CONCRETE ASSOCIATION, GREAT LAKES CONSTRUCTION ASSOCIATION, AMERICAN COUNCIL OF ENGINEERING COMPANIES (ILLINOIS CHAPTER), CHICAGOLAND ASSOCIATED GENERAL CONTRACTORS, UNDERGROUND CONTRACTORS ASSOCIATION OF ILLINOIS, and ILLINOIS CONCRETE PIPE ASSOCIATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County<br><br>18 CH 02992<br><br><br>Honorable Alison C. Conlon, |
|     Plaintiffs-Appellants, | ) ) | Judge Presiding |
|   v. | ) ) | |
| THE COUNTY OF COOK, a Body Politic and Corporate, | ) ) | |
|     Defendant-Appellee. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment and opinion.

**OPINION**

¶ 1     In 2016, Illinois voters approved the "Safe Roads Amendment" to the Illinois

Constitution, codified in Article IX, section 11. See Ill. Const. 1970, art. IX, § 11. Broadly

speaking, the Amendment mandates that, when the government collects revenue from

transportation-related fees and taxes, it may only spend that revenue for transportation-related purposes.

¶ 2    Plaintiffs sued Cook County, claiming that the County was violating the Amendment by spending transportation-generated revenue for non-transportation purposes. See *Illinois Road and Transportation Builders Association v. County of Cook*, 2022 IL 127126, ¶¶ 4-5. Cook County's principal response was that the Amendment did not apply to home-rule units of local government such as Cook, an argument that persuaded the circuit and appellate courts but not our supreme court. *Id*. ¶ 60. The supreme court held that the Amendment governed the spending of home-rule units like Cook County, too, and remanded the cause to the circuit court for further proceedings. *Id*. ¶ 62.

¶ 3    Back in the circuit court two months later—July 2022—plaintiffs moved for a preliminary injunction against the County, claiming that, in its upcoming budget for Fiscal Year 2023 (which begins on December 1, 2022), the County planned "to continue its longstanding practice of depositing revenues generated by the Cook County Transportation Taxes into the County's Public Safety Fund." The County had not yet passed budget legislation for Fiscal Year 2023, but plaintiffs pointed to the County's budget forecast documents to show that it intended to continue spending money in the same way it did before the supreme court's decision.

¶ 4    Plaintiffs sought an order "preliminarily enjoining the County from diverting revenue generated by the following taxes and fees to the Public Safety Fund or to any other non-transportation purpose in its Fiscal Year 2023 Budget: (i) the Cook County Home Rule County Use Tax; (ii) the Cook County Retail Sale of Gasoline and Diesel Fuel Tax; (iii) the Cook County New Motor Vehicle and Trailer Excise Tax; (iv) the Cook County Home Rule Use Tax

for Non-Retailer Transfers of Motor Vehicles; (v) the Cook County Wheel Tax on Motor Vehicles; and (vi) the Cook County Parking Lot and Garage Operations Tax."

¶ 5    The County raised several arguments in response. As to plaintiffs' likelihood of success on the merits, among other things, the County argued that "the Fiscal Year 2023 budget is being developed in light of the Supreme Court's recent ruling," and the County had "no intention of adopting a Fiscal Year 2023 budget that does not comply with the law." The County repeatedly pointed out that the budget process was "ongoing."

¶ 6    As to the issue of irreparable harm, the County more or less returned to this same theme, that the budget had not yet been implemented, so the motion was based on speculation: "Plaintiffs' conjecture as to what the County may do in the future is insufficient to demonstrate a risk of irreparable harm."

¶ 7    In reply, plaintiffs argued that the County's preliminary budgeting documents were premised on an "unreasonable" interpretation of the Amendment. While recognizing that they were concerned with "preliminary" budgeting, they claimed an injunction was necessary because the County had shown no intention of complying with the Amendment.

¶ 8    The circuit court held a hearing. The parties presented testimony about the County's budgeting process and whether its preliminary budget documents complied with constitutional requirements. We need not delve deeply into that testimony, as we resolve this appeal on a more fundamental ground. Suffice it to say that the parties each presented opinion witnesses who had very different ideas about whether the County's budget plans would comply with the Amendment.

¶ 9    The court denied the motion. On the likelihood of success on the merits, the court found that plaintiffs had failed to show that the County "will use Transportation Tax Revenues in FY23

in ways that violate the Amendment." As to risk of irreparable harm, the court found that any harm was "speculative" in light of plaintiffs' failure to prove the County would spend the money inappropriately.

¶ 10    The day after the circuit court denied the motion for preliminary injunction—October 20, 2022—plaintiffs filed their notice of appeal. Briefing was expedited under Illinois Supreme Court Rule 307(c) (eff. Nov. 1, 2017) and concluded on November 16.

¶ 11    It bears noting that, during all this time from July to October 2022, and even by the time briefing before this court had concluded on November 16, the County had not yet enacted its budget ordinance for Fiscal Year 2023, which begins on December 1, 2022.

¶ 12    Given the circumstances, we have endeavored to release this opinion in as expedited a manner as possible.

¶ 13    One of the principal arguments of the County in opposition to plaintiffs' motion is that plaintiffs are complaining about legislation that has not yet become law. It is on that point that we decide this appeal.

¶ 14    In their motion for preliminary injunction, plaintiffs predict that, based on budget forecasting documents for FY23 produced by the County, "the County will continue to divert revenues generated from the Cook County Transportation Taxes to purposes other than transportation, as it did in Fiscal Years 2017- 2022." Based on that prediction, plaintiffs pray for an order enjoining the County "from diverting revenue generated by the [certain enumerated] taxes and fees to the Public Safety Fund or to any other non-transportation purpose in its Fiscal Year 2023 Budget ***."

¶ 15    There are two interrelated problems with the relief plaintiffs request. The first is that a court cannot and should not review the constitutionality of pending legislation. There is no such

thing as an unconstitutional bill—only an unconstitutional *law*. Until that legislation carries the force of law, the constitutionality of that legislation is not ripe for adjudication. See *Smart Growth Sugar Grove, LLC v. Village of Sugar Grove*, 375 Ill. App. 3d 780, 789 (2007); *State ex rel. Althouse v. City of Madison*, 55 N.W.2d 449, 456 (Wis. 1977) ("A court cannot deal with the question of constitutionality until a law has been duly enacted and some person has been deprived of his constitutional rights by its operation." (Internal quotation marks omitted.)); *Zukerberg v. District of Columbia Board of Elections & Ethics*, 999 F. Supp. 2d 79, 86 (D.D.C. 2013) (no matter how likely bill's passage, "[t]he full legislative process must still be completed," resulting in enacted law, before question of constitutionality is ripe for review).

¶ 16    And for good reason: A piece of legislation is subject to change throughout the legislative process. It can be amended within the legislative body.  It might pass and it might fail to pass. And if it passes, in many cases, the chief executive may veto, amendatorily veto, or line-item veto that legislation.  The legislative body may then accept or override any veto.

¶ 17    Indeed, here, it was not certain, in September and October 2022, that the Cook County Board of Commissioners would adopt a budget ordinance precisely in line with the budget recommendations submitted by the County Board President and her various departments—or that it would adopt a budget ordinance at all. Nor, for that matter, was it certain that the County Board President would approve in full any such ordinance, as the president has the authority to approve, veto, or line-item veto any appropriation ordinance presented to her. See 55 ILCS 5/2-6008 (West 2022). And the County Board may then either acquiesce in that veto or override it by super-majority vote. *Id.*

¶ 18    None of this legislative action sets anything in stone until the legislative process, including any relevant executive action, is complete—and only then if that completed process

results in an enacted law. Only an enacted statute (at the state level) or ordinance (at the local level) has the force of law, binding the government and affecting the rights of citizens. See *Growth Sugar Grove*, 375 Ill. App. 3d at 789. Only then may a court intervene to determine the constitutionality of that legislative act. *Id*.

¶ 19    Imagine were it otherwise. There are, for example, typically thousands of bills pending before the Illinois General Assembly at any given time at various stages of the process; at the moment of this writing, there are over four thousand senate bills and nearly six thousand house bills pending. See *https://www.ilga.gov/legislation/default.asp*. (site last visited 11/10/22). Under plaintiff's theory, we could review the constitutionality of any of those bills pre-enactment, regardless of whether they had just been introduced or were sitting on the governor's desk, regardless of whether amendments had been filed or would have been filed to substantively alter those bills. It is for good reason that the ripeness doctrine forbids the judiciary from meddling in pre-enactment legislation.

¶ 20    Plaintiffs, who directly addressed the ripeness question, at our request, in their reply brief, would have us view their legal maneuver differently. They claim that they are not seeking a pre-enactment adjudication of an ordinance's constitutionality but, rather, simply an order that the County comply with the Amendment when adopting that ordinance.

¶ 21    But on closer scrutiny, that is saying the same thing a different way. After all, as the arguments have played out, both below and on appeal, plaintiffs have not limited their request to ordering the County to "comply with the Amendment" or "not violate the constitution." Their argument is that the way in which the County is preparing its budget documents—which the County insists is compliant—is not, in fact, compliant with the Amendment. They are asking a court, in other words, to agree with them that the current manner in which the County is

preparing its budget will result in an appropriations ordinance that violates the Amendment, thus prompting the need for preliminary injunctive relief to ensure that the County enacts a constitutional version. To pretend that a court could grant such relief *without* substantively considering the constitutionality of the County's unenacted plan for budgeting is folly.

¶ 22    Indeed, that is precisely what happened below. The circuit court heard opinion testimony from both sides and determined that the County's spending plan likely would satisfy the Amendment if enacted into law, and thus plaintiffs had not shown a likelihood of success on the ultimate merits. The circuit court prejudged the constitutionality of a future law, at least on a preliminary basis.

¶ 23    As one commentator wrote a decade ago about the United States Supreme Court:

"[T]he Supreme Court will not consider whether potential legislative or executive action violates the Constitution when such action is proposed. *** So, if a legislative coalition wishes to enact a law that might plausibly be struck down *** it must form its own estimation of whether the proposal is constitutional but cannot know for certain how the Court will ultimately view the law." Note, *Advisory Opinions and the Influence of the Supreme Court over American Policymaking,* 124 Harv. L.Rev. 2064, 2064 (2011), *quoted in Zukerberg*, 999 F. Supp. 2d at 86.

¶ 24    Though ripeness principles do not always translate one-for-one from federal court to Illinois law, this sentiment is directly in line with Illinois law. If we accepted plaintiffs' invitation to order the County, pre-enactment, to adopt an appropriations ordinance that complies with the constitution, with specificity on what that ordinance should and should not contain to accomplish that result, we would be rendering an advisory opinion on the substantive content of future legislation. See, *e.g.*, *Smart Growth Sugar Grove*, 375 Ill. App. 3d at 789 (validity of

village's comprehensive zoning plan, which was not ordinance and lacked force of law, was not ripe for review and "would require us to provide the sort of advisory opinion or legal advice about future events that we may not provide"); *State ex rel. Wagner v. Evnen*, 948 N.W.2d 244, 252 (Neb. 2020) ("[a]n opinion on the substantive challenge [to legislative measure] based on the contingent future event of the measure's passage would be merely advisory." (Internal quotation marks omitted.)).

¶ 25    Related to the ripeness problem is the flagrant separation-of-powers concern that plaintiffs' motion raises. Even if we accepted plaintiffs' argument that they are not seeking a predetermination of constitutionality but, rather, simply an order that the County do or not do something in its FY23 appropriations ordinance so that it satisfies the constitution, the court is being asked to meddle into the legislature's exclusive domain of drafting and enacting laws, a line the judiciary cannot cross. As our supreme court has noted in reviewing previous action of Cook County government, " '[t]he legislative department determines what the law shall be, *** and the judicial department construes and applies the law.' " *People ex rel. Hansen v. Phelan*, 158 Ill. 2d 445, 451 (1994) (quoting *Fergus v. Marks*, 321 Ill. 510, 513 (1926)). "In keeping with our constitutional mandate, the judiciary will not arrogate to ourselves the legislative function." *Id*. at 451-52.

¶ 26    If we granted plaintiffs relief here, there would be no principled limitation to that unprecedented step. Take again those thousands of bills pending before the Illinois House and Senate currently, this time seen through plaintiff's view of their requested relief. For any one of those bills, at any stage of the process, no matter how likely to pass, no matter the odds that the legislature itself might amend them, the judiciary could be called on to order the legislature to enact that bill in such a way that it "does not discriminate on the basis of race," "does not

suppress free speech," "does not establish a government religion," or, perhaps more broadly yet, "does not violate the Constitution in any way"—along with suggestions on how the legislature should avoid those constitutional pitfalls. It is impossible to view that as anything but judges telling legislators how to write their laws. See *Althouse*, 55 N.W.2d at 456 ("no court has jurisdiction to enjoin the legislative process at any point," and "no court has heretofore attempted to interfere with the right of the legislature to enact and put in force a law." (Internal quotation marks omitted.)).

¶ 27    We recognize, of course, that it is very likely that the County will, in fact, adopt an appropriations ordinance for FY23, for the County could not operate without one. And it is quite likely, as plaintiffs insist in their Reply, that this ordinance will be written much in the way the County told the circuit court it planned to adopt it. But none of that makes a difference. It is still not ripe for our review until it has the force of law. See *Zukerberg*, 999 F. Supp. 2d at 86 ("just because [challenged legislation]'s passage is likely or even 'inevitable' does not mean it is ripe for review. *** The full legislative process must still be completed."). Our pre-enactment review would be nothing but an advisory opinion. And anything we said about that unenacted legislation would be a gross encroachment on the legislature's exclusive prerogative to enact laws.

¶ 28    We express no opinion whatsoever on the merits of the arguments raised by the parties about what the Amendment does or does not require of the County's future appropriations ordinance for FY23. That question, at the moment, is beside the point. Plaintiffs' motion for preliminary injunction, filed as it was before any ordinance was adopted, was premature and thus should have been rejected out of hand. As the circuit court denied that motion, we affirm that judgment, albeit on a different ground.

¶ 29    Affirmed.

*Illinois Road & Transportation Builders Ass'n v. County of Cook*, **2022 IL App (1st) 221582**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-2992; the Hon. Alison C. Conlon, Judge, presiding. |
| **Attorneys for Appellant:** | John M. Fitzgerald, Michael J. Grant, Amanda N. Catalano, Tae Y. Kim, of Tabet DiVito & Rothstein LLC, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Amy Crawford, Jonathon D. Byrer, Assistant State's Attorneys, of counsel); Kenneth S. Ulrich, David E. Morrison, Rachel C. Steiner, W. Kyle Walther, Stacey E. Petrek, of Goldberg Kohn Ltd., of Chicago, Special Assistant State's Attorneys, for appellee. |